**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**CAREFIRST OF MARYLAND, INC.**
**d/b/a CAREFIRST BLUE CROSS BLUE SHIELD,**
                    **Plaintiff,**

**v.**                                                        **Civil Action:**
                                                             **2:04cv191**

**FIRST CARE, P.C.,** *et al.*
                    **Defendants.**

**ORDER**

In this case, Plaintiff CareFirst of Maryland, Inc. ("CareFirst"), which does business as CareFirst Blue Cross Blue Shield and is a health maintenance organization serving primarily the mid-Atlantic region, sued First Care, P.C., a small group of family doctors with offices in Portsmouth and Chesapeake, Virginia, for trademark infringement and dilution.  Plaintiff CareFirst sought $28 million in damages.  This Court granted summary judgment to Defendant First Care, concluding that Plaintiff CareFirst's failure to show infringement or dilution was "so spectacular that the Court has strained to understand why it has persisted with this case at all."  Nov. 2, 2004 Order at 20 (Doc. 148); Carefirst of Maryland, Inc. v. First Care, P.C., 350 F.Supp. 2d 714, 726 (E.D.Va. 2004).   On January 11, 2006, the United States Court of Appeals for the Fourth Circuit affirmed this Court's decision in a published opinion, holding that Plaintiff CareFirst met none of the factors for likelihood of confusion in relation to its trademark claim and failed to show dilution.  CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 274 (4th Cir. 2006).   Apparently, this case, which has been both contentious yet clear-cut from the start, is finally close to coming to an end.

As Yogi Berra said, the fat lady has not sung.   A few pending motions must be addressed;

Defendant First Care requests attorneys' fees; and, this Court, <u>sua</u> <u>sponte</u> and for the reasons detailed <u>infra</u>, **ORDERS** Plaintiff CareFirst to **SHOW CAUSE** as to why, in addition to Defendant First Care's motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) and Fed. R. Civ. P. 54(d), sanctions pursuant to FED. R. CIV. P. 11, Local Civil Rule 83.1(L) of the United States District Court of the Eastern District of Virginia, and the Court's inherent power to sanction litigants' behavior should not be imposed.  As described <u>infra</u>, Plaintiff CareFirst's conduct in this case has been extraordinary.  The parties are accordingly **NOTIFIED** that, in addition to Defendant First Care's motion for attorneys' fees, the Court will also consider, at an evidentiary hearing, whether sanctions should be awarded against either the attorneys for Plaintiff CareFirst or Plaintiff CareFirst itself.   Both parties are **DIRECTED** to brief the issue of whether sanctions should be imposed and, if so, the scope of such sanctions within twenty (20) days of the date of this Order.   Both parties may submit a response to the other party's brief within three (3) days after the service of the opposing party's brief.   As the Court may sanction the client in this case as well, <u>see</u> <u>In re Kunslter</u>, 914 F.2d 505, 525 (4th Cir. 1990), should Plaintiff CareFirst desire to submit a brief separate and apart from its attorneys' brief, the Court will allow it to do so.  The Court will also allow it to appear at the evidentiary hearing.  The parties and the attorneys are also **ORDERED** to contact Beth Orga, the Court's Deputy Clerk, at 757-222-7251 so that an evidentiary hearing may be scheduled on attorneys' fees and sanctions.   Given the briefing schedule, the evidentiary hearing should be scheduled to occur sometime after twenty-four (24) days of the date of this Order.

In addition, for the reasons stated herein, the Court **GRANTS** Defendant First Care's Motion for Leave to File a Supplemental Submission in Support of its Petition for Attorneys' Fees (Doc. 178), **DENIES** Defendant First Care's Motion to Strike the Declaration of Sharon Miller included in Plaintiff's Opposition Memorandum (Doc. 155), **GRANTS** Plaintiff CareFirst's Motion for Leave to

File Sur-Reply in Opposition to Defendant First Care's Petition for Attorneys' Fees (Doc. 156), and

**DISMISSES AS MOOT** Defendant First Care's Motion to Strike as Untimely Plaintiff CareFirst's

Reply filed by Plaintiff First Care (Doc. 168).


I.      **Pending Motions**

On September 2, 2005, this Court ordered that motions pending before it be held in abeyance

until the matter on appeal had been decided and a mandate issued. The mandate was issued on

February 3, 2006.   Accordingly, the Court will now consider the pending motions.

A.      **Defendant First Care's Motion for Leave to File a Supplemental Submission in Support of its Petition for Attorneys' Fees (Doc. 178).**

The Court will begin with Defendant First Care's Motion for Leave to File a Supplemental

Submission in Support of its Petition for Attorneys' Fees (Doc. 178).   Local Civil Rule 7(F)(1)

provides that leave of court must be obtained before a supplemental motion may be submitted.

Defendant First Care filed this motion on February 6, 2006, after the mandate from the

appellate court was issued.   It asks to supplement its motion for attorneys' fees to cover events that

occurred after this Court entered summary judgment on November 2, 2004 and after Defendant First

Care filed its petition for attorneys' fees on November 5, 2004, pointing specifically to CareFirst's

motion on March 14, 2005 to supplement the record on appeal.   Plaintiff CareFirst objects to

Defendant First Care's motion to supplement, arguing that the motion practice at issue related to the

appeal and that costs on appeal do not include attorneys' fees.

The problem with Plaintiff CareFirst's argument is that the motion practice they instigated

before the United States Court of Appeals for the Fourth Circuit in relation to this motion was deemed

by the appellate court to have occurred before the wrong court.   The appellate court ended up

instructing Plaintiff CareFirst to seek relief from <u>this</u> Court, noting that Local Appellate Rule 10(e) "states that disputes concerning the composition of the record on appeal should be resolved in the district court in the first instance."   <u>CareFirst of Maryland v. First Care, P.C.</u>, CA-04-191-2  (4th Cir. February 7, 2005).   Indeed, the appellate court found it "particularly appropriate in the instant case," <u>see id.</u> at 2, probably because, as this Court concluded in its Order dated April 29, 2005, that Plaintiff CareFirst's motion to supplement the record was an effort to blame this Court for its own inattention to deadlines.   <u>See</u> April 29, 2005 Order at 6-7 (Doc. 173).   Accordingly, the Court **GRANTS** Defendant First Care's Motion for Leave to File a Supplemental Submission in Support of Petition for Attorneys' Fees and the Clerk is **DIRECTED** to file the Supplemental Submission.    Pursuant to Local Rule 7, Plaintiff CareFirst will have eleven (11) days from the date of this Order to file a responsive brief and Defendant First Care may file a rebuttal brief within three (3) days after service of the reply brief.

> **B.    Defendant First Care's Motion to Strike the Declaration of Sharon Miller included in Plaintiff's Opposition Memorandum (Doc. 155).**

On November 22, 2004, Defendant First Care filed a Motion to Strike the Declaration of Sharon Miller, which Plaintiff CareFirst had filed in its response to Defendant First Care's motion for attorneys' fees.  Defendant First Care made this request arguing that Plaintiff CareFirst was attempting "to submit (and previously undisclosed) expert testimony and opinions . . . to shoehorn new opinions into a closed record so that [it] can improve its appellate arguments," particularly with respect to her new declaration that there has been a "blurring" of lines between health care insurers and providers. Def.'s Mot. to Strike Decl. of Sharon Miller at 1 (Doc. 155).  In Defendant First Care's view, this new testimony had the potential to prejudice defendants on appeal.   Given that the appellate court has decided this case in Defendant First Care's favor, their concerns in this regard were unmerited and are

4

subsequently moot.  Moreover, with respect to their argument that such testimony is "immaterial" to the award of attorneys' fees in this case under the "exceptional" case analysis provided for by 15 U.S.C. § 1117(a), the Court declines to limit Plaintiff CareFirst's ability to adequately defend itself against an award of attorneys' fees in this manner or at this time.  Accordingly, Defendant First Care's motion to strike is **DENIED.**

> **C.**   **Plaintiff CareFirst's Motion for Leave to File Sur-Reply in Opposition to Defendant First Care's Petition for Attorneys' Fees filed by Plaintiff CareFirst (Doc. 156).**

On November 23, 2004, Plaintiff CareFirst filed Motion for Leave to File Sur-Reply in Opposition to First Care's Reply in Support of their Petition for Attorneys' Fees.  (Doc. 156).   Local Civil Rule 7(F)(1) provides that leave of court must be obtained before a supplemental motion may be submitted.  Plaintiff CareFirst's motion is **GRANTED** and the Clerk is **DIRECTED** to file the Sur-Reply.   No further motions shall be permitted without prior permission of the Court.   The parties may utilize the scheduled hearing to address and contest the other's arguments.

> **D.**   **Defendant First Care's Motion to Strike as Untimely Plaintiff CareFirst's Reply filed by Plaintiff First Care (Doc. 168).**

On November 19, 2004, Plaintiff CareFirst filed a Motion for Reconsideration in response to this Court's order granting Defendant First Care's motion for summary judgment.  (Doc. 154).  On November 29, 2004, at the request of both parties, this Court granted Defendant First Care an extension of time to respond to Plaintiff CareFirst's motion, extending the time by three days to December 3, 2004.  Pursuant to Local Rule 7, Plaintiff CareFirst's Reply would therefore be due by December 8, 2004, as weekends are not included as part of the three-day reply deadline.  On December 10, 2004, the Court denied Plaintiff CareFirst's Motion for Reconsideration.  Meanwhile, on that same date, Plaintiff CareFirst untimely filed its Reply.   The Court clearly did not consider Plaintiff

CareFirst's motion, as it had issued its order prior to receiving it.   Nevertheless, Defendant First

Care's Motion to Strike is based in part on Plaintiff CareFirst's "vitriolic tone" because Plaintiff

CareFirst describes Defendant First Care's opposition to its motion to reconsider as "sycophantic"

because it agreed with the Court's summary judgment analysis.  See Pl.'s Reply Brief in Supp. of Mot.

for Reconsideration at 2 (noting Defendant First Care's "sycophantic rhetoric") (Doc. 167).  Plaintiff

CareFirst's tone was indeed inappropriate.  The Court, however, **DISMISSES AS MOOT** Defendant

First Care's motion to strike, as the Court did not consider Plaintiff CareFirst's reply, as it was

untimely filed, and it clearly did not prejudice Defendant First Care in any way.   The Court also

prefers to let the record fully reflect Plaintiff CareFirst's conduct in this litigation.


## II.    Possible Sanctions

A federal court "possesses the inherent power to regulate litigants' behavior and to sanction

a litigant for bad-faith conduct."  In re Weiss, 111 F.3d 1159, 1171 (4th Cir. 1997).  Indeed, "[c]ourts

of justice are universally acknowledged to be vested, by their very creation, with power to impose

silence, respect, and decorum, in their presence, and submission to their lawful mandates."  Anderson

v. Dunn, 6 (Wheat.) 204, 227 (1821).  Courts, therefore, have inherent discretion to impose sanctions,

which are "governed not by rule or statute but by the control necessarily vested in courts to manage

their own affairs so as to achieve the orderly and expeditious disposition of cases."  Link v. Wabash

R. Co., 370 U.S. 626, 630-31 (1962).  "A primary aspect of that discretion is the ability to fashion an

appropriate sanction for conduct which abuses the judicial process."  Chambers v. NASCO, Inc., 501

U.S. 32, 44-45 (1991).

"[F]ormal rules and legislative dictates" do not limit district courts' "power to control

misbehaving litigants."   Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3rd.

Cir. 1994).  Accordingly, "[a] court may invoke its inherent power in conjunction with, or instead of,

other sanctioning provisions."  In re Weiss, 111 F.3d at 1171.  Pursuant to FED. R. CIV. P. 11(B), a

court, "[o]n its own initiative . . . may enter an order describing the specific conduct that appears to

violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not

violated subdivision (b) with respect thereto."  Subdivision (b) of Rule 11 provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating)
> a pleading, written motion, or other paper, an attorney or unrepresented party is
> certifying that to the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances,--
>
>> (1) it is not being presented for any improper purpose, such as to harass
>> or to cause unnecessary delay or needless increase in the cost of
>> litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are
>> warranted by existing law or by a nonfrivolous argument for the
>> extension, modification, or reversal of existing law or the establishment
>> of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary
>> support or, if specifically so identified, are likely to have evidentiary
>> support after a reasonable opportunity for further investigation or
>> discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or,
>> if specifically so identified, are reasonably based on a lack of
>> information or belief.

FED. R. CIV. P. 11(b).  In this way, under Rule 11, papers submitted before a court must be filed for

a proper purpose.  The legal contentions must have a sufficient basis in law, and the claims must have

a sufficient basis in fact.  Otherwise, sanctions are warranted.  See Chaplin v. Du Pont Advance Fiber

Systems, 303 F.Supp.2d 766, 769 (E.D.Va. 2004).

    In addition, Local Civil Rule 83.1(L) of the United States District Court of the Eastern District

of Virginia requires that "[a]ll counsel admitted to practice before this Court or admitted for the

purpose of a particular proceeding pro hac vice shall be admitted subject to the rules, conditions, and

provisions set forth in full as Appendix B to these Local Rules."   The rule in Appendix B particularly

relevant to this case is Federal Rule of Disciplinary Enforcement IV, Standards of Professional

Conduct.   It provides:

> A. For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to other disciplinary action as the circumstances may warrant.
>
> B. Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Virginia Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of any attorney-client  relationship. The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the highest Court of the state in which this Court sits, as amended from time to time by that state Court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives of bar associations within the state.

After reviewing the Virginia Rules of Professional Conduct, Rule 1.1 (Competence), Rule 1.3

(Diligence), Rule 3.1 (Meritorious Claims and Contentions), and Rule 3.4 (Fairness to Opposing Party

and Counsel), arguably apply in this case, as detailed below.   When finding such misconduct,

discipline is warranted.

Sanctions of any kind are serious.   Consequently, when requesting a show cause order <u>sua

sponte</u>, "a court is obliged to use extra care in imposing sanctions on offending lawyers." <u>Hunter v.

Earthgrains</u>, 281 F.3d 144, 151 (4th Cir. 2002).   It must "particularize the behavior it deems

sanctionable." <u>Id.</u> at 157.   The Court hereby **DIRECTS** Plaintiff CareFirst to **SHOW CAUSE** why

it and its client have not violated subdivision (b) of Rule 11 and Local Civil Rule 83.1(L) and why the

Court, under its own inherent powers to sanction conduct, should not order sanctions in this case given

the conduct described below.

### A. Improper Purpose

Plaintiff CareFirst should address why their filing of the motions and pleadings in this case were not filled for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED. R. CIV. P. 11(b)(1).   The list provided in the rule sets forth a non-exclusive list of improper purposes, and "[t]he enumerated improprieties are examples only of the type of conduct proscribed by the Rule." In re Computer Dynamics Inc., 252 B.R. 50, 57 (Bkrtcy. E.D. Va. 1997).   Improper conduct may therefore include a variety of behavior.   "To harass or to cause unnecessary delay or needless increase in the cost of litigation" are therefore merely examples provided for in the rule.   FED. R. CIV. P. 11(b).

When determining improper conduct, the United States Court of Appeals for the Fourth Circuit has explained that the guiding principle is whether "the purpose to vindicate rights in court [is] central and sincere."   In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990).   A party's sincerity comes into question when excessive motions are filed.   Indeed, "[f]iling of excessive motions may sometimes constitute 'harassment' under the rule even if the motions are well grounded."   Id.   The appellate court goes on to explain that "[r]epeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose."   Id. at 519.   A finding that counsel never intended to litigate an action also supports a finding of improper purpose.   Id.   Obviously, filing excessive motions could also needlessly increase the cost of litigation.

In its summary judgment order, the Court marveled at the volume of filings, many appearing to be baseless, generated in this case.   Nov. 2, 2004 Order at 20 (Doc. 148); Carefirst of Maryland, Inc. v. First Care, P.C., 350 F. Supp. 2d 714, 726 (E.D. Va. 2004).   It is also concerned by Defendant

First Care's contention that "CareFirst had grown accustomed to bullying physicians and small companies into submission, 'prevailing' against dozens of third-party users in a crowded trademark field who could not, or would not, muster the resources necessary to engage in federal court litigation." Def.'s Reply to Pl.'s Brief in Opp. to Mot. for Attorneys' Fees at 2 (Doc. 153).  As an example of this conduct, Defendant First Care alleges that Plaintiff CareFirst, through counsel and prior to the instigation of this litigation, threatened Marc Mertz, Defendant First Care's administrator, and told Mr. Mertz "not to tell his attorney about the conversation."  Def.'s Brief in Supp. of Mot. for Attorneys' Fees at 9 (Doc. 150).[1]   Defendant First Care goes on to assert that Mr. Mertz was told during the course of a third-party deposition taken regarding another action by Ruth Mae Finch, a CareFirst attorney, that if "First Care did not voluntarily change its name within two weeks – CareFirst would sue First Care and take all of its profits for the past nine years."  Id.   This same threat was repeated by cell phone by Barth X. deRosa, another CareFirst attorney.   Id. at 10, Ex. 1 (Marc Mertz Declaration).  According to Defendant First Care, Attorney Finch told Mr. Mertz to not to tell his attorney about the conversation because the attorney "will get excited about it."  Id.[2]  Certainly, if

---

[1]The Court is aware that Rule 11 only applies to papers filed before the Court.  Should the Court desire to sanction this specific conduct, it will do so under its general and inherent powers to do so or under Local Rule 83.1.  The Court describes this conduct at this juncture because it suggests Plaintiff CareFirst utilized harassing tactics throughout its dealings with Defendant First Care.

[2]Plaintiff CareFirst denies this allegation, arguing that such communication would have been included in its cease and desist letter and was not.  Plaintiff CareFirst also includes a declaration by the court reporter at the deposition that she heard Attorney Finch advise Mr. Mertz that, because the names were so similar, she would "be entitled to file litigation against his company" and that she did not overhear the "he will get excited about it" comment.  Pl.'s Mem. in Opp. to Def.'s Mot. for Attorneys' Fees at Ex. H.  In any event, Mr. Mertz was so upset by the encounter that he wrote the CEO of CareFirst.  Def.'s Mem. in Supp. of Mot. for Attorneys' Fees at Ex 1 (Doc. 150).  (The letter is attached as Exhibit 1A).  According to Mr. Mertz, he received a letter from Mr. Livio Broccolino, CareFirst's deputy counsel, confirming that the attorneys were "truly representing [CareFirst's] wishes" and he had "no evidence of [the attorneys] being overzealous."  Id.  (The letter is attached as Ex. 1B).

after an evidentiary hearing the Court finds this conduct occurred, such conduct might suggest that the improper purpose of harassment colored this case from the start and that Plaintiff CareFirst's dilatory conduct, frivolous filings, and abusive language were simply extensions of its early behavior.

Similarly, sanctions are also proper  when a motion or pleading is filed "without a sincere intent to pursue it."  In re Kunstler, 914 F.2d at 518.   Although the Court notified both parties that it intended to issue a summary judgment order and therefore no trial-related motions were necessary, Plaintiff CareFirst nevertheless proceeded to file a motion in limine.  Surely Plaintiff CareFirst had no intention of pursuing this motion when it knew the Court planned to issue summary judgment and any purported lack of understanding of this fact strains credulity.   At the final pre-trial conference on October 26, 2004, the Court indicated, more than once, it was concerned about the rapidly approaching trial date but would attempt to order summary judgment.   The Court went on to inform the parties that they would be notified if it planned to enter summary judgment:

> If I do, if I find that summary judgment is appropriate, I may enter
> summary judgment and tell you I have entered summary judgment and
> then get the opinion out later.  There's a volume of information here.
> But we'll see where we're going.

October 26, 2004 Final Pre-trial Conference, Tr. at 105, ll. 12-15 (Doc. 165).   At the end of the hearing, the Court reiterated that it would make every effort to decide the case on summary judgment to avoid additional expense to the parties:

> We'll try it.  If I don't reach summary judgment.  I'm going to do my
> darndest to arrive at summary judgment if I possibly can to avoid a
> week-long trial which I think would be unduly expensive on everyone.

Tr. at 111, ll. 16-19.   On October 29, 2004, the Court's law clerk called the parties to inform them the Court was going to enter summary judgment and that no trial-related motions should be filed. Defendant First Care understood this instruction; Plaintiff CareFirst did not, preferring to file a motion

in limine instead of a reply to Defendant First Care's brief in opposition to their summary judgment

motion  (a motion, notably, filed only five business days prior to the final pre-trial conference).[3]  In

spite of the untimeliness of their summary judgment motion, Plaintiff CareFirst blamed this Court for

their inability to file a reply to Defendant First Care's opposition to their motion, filing a Motion to

Supplement the Record on Appeal pursuant to Local Rule 10(e) of the United States Court of Appeals

for the Fourth Circuit[4] to maintain that this Court instructed them not to file a reply.[5]  Only now does

---

[3]As the Court noted in its Order dated April 29, 2005 addressing this issue, the Scheduling
Order for this case states:

> Disposition of motions for summary judgment maturing immediately
> preceding the final pretrial conference, or later, is left to the discretion
> of the court, and such motions may or may not be addressed prior to
> trial.

Rule 16(b) Scheduling Order ¶ 9 (May 26, 2004) (Doc. 173) (emphasis in original).  See also Local
Civil Rule 56(A) (stating "[n]o motion for summary judgment shall be considered unless it is filed
and set for hearing or submitted on briefs within a reasonable time before the date of trial . . . .").
Defendant First Care filed its Motion for Summary Judgment on October 7, a month prior to the trial
date.  Plaintiff CareFirst, on the other hand, filed its Motion for Summary Judgment on October 19,
2004, five days prior to the final pre-trial conference.  Under Local Civil Rule 7(F)(1), parties have
eleven days to file a responsive brief and the moving party has three days in which to file a reply.
As such, unless Defendant First Care responded to Plaintiff CareFirst's summary judgment motion
almost instantly, it would not have been possible for Plaintiff CareFirst's motion to have matured
at all before the final pretrial conference – much less immediately preceding the final pretrial
conference.  The Scheduling Order was clear:  when motions for summary judgment are filed close
to the final pretrial conference, the Court has the discretion to address such motions or not.  Plaintiff
CareFirst, in fact, was fortunate that the Court even considered its Motion for Summary Judgment
at all, as the Court could have disregarded it altogether.

[4]Local Rule 10(e) of the United States Court of Appeals for the Fourth Circuit provides:

(1) If any difference arises about whether the record truly discloses what occurred in
the district court, the difference must be submitted to and settled by that court and the
record conformed accordingly.

(2) If anything material to either party is omitted from or misstated in the record by
error or accident, the omission or misstatement may be corrected and a supplemental
record may be certified and forwarded:

Plaintiff CareFirst take some sort of responsibility for its actions, admitting it "misinterpreted" the Court's instruction. Pl.'s Reply to Def.'s Supp. Submission in Supp. of Attorneys' Fees at 3 (Doc. 179). Somehow, Plaintiff CareFirst took the Court's instruction as allowing trial-related motions but prohibiting summary judgment-related motions. The Court expects to be briefed on Plaintiff CareFirst's sincerity in actually pursuing the motion in limine when the Court clearly articulated its intention to conclude the case on summary judgment.

Moreover, Plaintiff CareFirst's repeated inattention to detail and problems with deadlines and following court orders and rules suggests to this Court a lack of commitment and sincerity to properly prosecute this case. The following chart indicates the problems Plaintiff CareFirst had conducting this litigation:

| Incident | Location in Record | Problem |
|---|---|---|
| Plaintiff CareFirst failed timely to produce documents in response to defendants' request for production. | Magistrate Judge Stillman's August 13, 2004 Order at 5 (Doc. 31). | Compliance with court rules; timeliness. |
| Plaintiff CareFirst failed to furnish a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5). The Magistrate Court ordered Plaintiff | Id.; Magistrate Judge Stillman's Order dated Nov. 2, | Compliance with court rules, inattention to |

---

    (A) on stipulation of the parties;
    (B) by the district court before or after the record has been forwarded; or
    (C) by the court of appeals.

    (3) All other questions as to the form and content of the record must be presented to the court of appeals.

    [5]Ironically, Plaintiff's inattention to detail was repeated when it filed this motion. As detailed supra, Plaintiff CareFirst first filed this motion in the wrong court when it filed it in the appellate court. The appellate court subsequently instructed Plaintiff CareFirst to bring the motion before this Court.

| Incident | Location in Record | Problem |
|---|---|---|
| CareFirst to produce a revised log by August 17, 2004.  Plaintiff CareFirst produced a privilege log of forty-two pages on August 20, 2004, three days after the court-imposed deadline. | 2004 (Doc. 147). | detail; timeliness. |
| Plaintiff CareFirst made objections to Defendant First Care's interrogatories and requests for production that were broad and general, providing little guidance to the Court as to the precise nature of the objections and less help in resolving them. | Magistrate Judge Stillman's August 13, 2004 Order at 5 (Doc. 31). | Compliance with court rules, inattention to detail. |
| Plaintiff CareFirst submitted an Opposition to Defendant First Care's Second Motion to Compel Production that contained "numerous factual errors and mistakes in its representations to the Court in prior pleadings opposing defendants' instant motions to compel."  Plaintiff CareFirst conceded that it:<br><br>1.  Confused the extension of time granted Defendant First Care with another infringement action pending in North Carolina.<br><br>2.  Mis-characterized the status of production in response to Defendant First Care's Motion to Compel by incorrectly stating it when it had produced "nearly 2,500 pages of documents."<br><br>3.  Referred to three types of documents, stating they had been produced when they had not. | Id. at 6; see also Pl.'s Opp. to Def.'s Second Mot. to Compel at 2-3 (Doc. 24). | Inattention to detail. |
| Plaintiff CareFirst concedes it missed the deadline of September 24, 2004 to provide its rebuttal to Defendant First Care's expert report.<br>After a telephone conference, Magistrate Judge Stillman ordered Plaintiff CareFirst to provide its rebuttal by October 4, 2004 and continued the hearing to October 5, 2004.<br><br>At the October 5, 2004 hearing, Mr. Christopher Collins, an attorney for Plaintiff CareFirst "accepted whatever responsibility there is for the missing deadline."  In his brief, however, he stated the | Pl.'s Mot. and Br. in Supp. of its Mot. for Enlargement of Time Within Which to Submit an Expert Rebuttal Report at 2 and 3 (Doc. 78); Oct. 5 Hearing, Trans. at 11- 13 (Doc. 130). | Timeliness; inattention to detail; blaming others for the problem. |

| Incident | Location in Record | Problem |
|---|---|---|
| problem occurred in part because, although he tried to contact the lead counsel for Defendant First Care, he had no success. See Pl.'s Mot. and Br. in Supp. of its Mot. for Enlargement of Time Within Which to Submit an Expert Rebuttal Report at 3 (Doc. 78). Yet, at the hearing, he suggested the problem occurred because of his local counsel. | | |
| Barth X. deRosa, Plaintiff CareFirst's lead counsel, was required to appear before Magistrate Judge Stillman on October 12, 2006 in order to answer questions under oath.  Magistrate Judge Stillman stated:<br><br>I have reviewed the pleadings.  There are confessions of error made repeatedly.  The Court has made determinations about dilatory conduct  and failure to comply. . . . In the most recent of the affidavits that I have seen from you, you confess chagrin, if not outright embarrassment, that certain documents were not produced pursuant to this Court's order of August 13, 2004, and there was production promised both on October 5th and October 8th.  What do you want to say to round out my, the Court's, understanding of what you're doing with the document production?  Because you appear to be the man in charge of that.<br><br>Mr. deRosa responded by saying he was away on vacation when the Magistrate Court issued its August 13th order, stating:<br><br>I was dealing with my people by telephone.  I requested those people to search my office, to search other people's offices for files regarding that matter, and I had assumed that that in fact, did occur.  It wasn't until just the other day when I found out that it did not occur to the degree I expected.<br><br>While Magistrate Judge Stillman did not find bad | October 12, 2004 Hearing, Trans 4-6, 11 (Doc. 115); Nov. 2, 2004 Order at 6 (emphasis added) (Doc. 147). | Timeliness; inattention to detail; blaming others for the problem; falsely accusing Defendants of causing the problem. |

| Incident | Location in Record | Problem |
|---|---|---|
| faith at that point, he observed he was troubled by the fact that Mr. deRosa had worked on this type of litigation since 1983.<br><br>On November 2, 2004, in his Sanctions Order, Magistrate Judge Stillman expressed his surprise to how Mr. deRosa reacted to Defendant First Care's Motion for Sanctions:<br><br>    The Court is especially surprised by Mr. de Rosa's reaction to defendant's motion, given that he had not verified compliance himself.  When confronted with this omission upon receipt of defendants' motion on October 1, 2004, Mr. deRosa did not acknowledge that plaintiff had somehow withheld or failed to claim privilege for documents subject to the Court's August 13, 2004 order.  Rather, <u>in a letter to defendants, Mr. deRosa worte that plaintiff has 'complied with the Court's August 13 Order . . .' and he accused defendants' motion of being 'nothing more than a litigation tactic designed improperly to waste the Court's and the parties time and money."</u> | | |
| At the October 26, 2004 sanctions hearing, Magistrate Judge Stillman stated he had "observed a pattern of dilatory conduct and disregard of the Court's orders and the Federal Rules of Civil Procedure on the part of . . . the plaintiffs."  Oct. 26 Hearing, Trans. 4 (Doc. 137).<br><br>Magistrate Judge Stillman concluded:<br><br>1.     While there was "substantial evidence for which the Court could infer bad faith," the Court was "persuaded by the representations of plaintiff that the discovery shortcomings were the result of inexcusable inadvertence and lack of diligence";<br><br>2.     Defendants were prejudiced by plaintiff's non-compliance with a Court order to | Oct. 26, 2004 Hearing, Trans. at 4 (Doc. 137); Nov. 2, 2004 Order at 4 (Doc. 147). | Dilatory conduct; disregard of the Court's orders; compliance with court rules. |

| Incident | Location in Record | Problem |
|---|---|---|
| produce documents about third party use and by its filing of a privilege log one month before trial;<br><br>3.     Plaintiff CareFirst must produce all documents added to the privilege log on October 8, 2004;<br><br>4.     Plaintiff CareFirst must supplement its answers to Defendants' Interrogatories No. 15 and 18;<br><br>5.     Plaintiffs CareFirst must compensate Defendant First Care $3000 in sanctions for attorneys' fees and expenses incurred in bringing the motion for sanctions. | | |
| Plaintiff CareFirst failed to comply with the Rule 16(b) Scheduling Order, which required it to distribute a proposed final draft to all other counsel and unrepresented parties on or before October 22, 2004.  Plaintiff CareFirst did not distribute the proposed final draft until October 26, 2004, four days after the October 22, 2004 deadline, causing the Court to have to take a recess at the pretrial conference to accommodate Plaintiff CareFirst's oversight. | Order dated Apr. 29, 2005 (Doc. 173). | Compliance with court orders; inattention to detail; timeliness. |
| As described in detail <u>supra</u>, Plaintiff CareFirst filed a motion <u>in limine</u> after the Court informed it that it planned to enter summary judgment and not to file trial-related motions. | Order dated Apr. 29, 2005 (Doc. 173). | Compliance with court orders; inattention to detail. |
| As described in detail <u>supra</u>, Plaintiff CareFirst incorrectly filed its motion to supplement the record in the United States Court of Appeals for the Fourth Circuit in spite of the fact that Local Rule 10(e) of the United States Court of Appeals for the Fourth Circuit requires differences regarding the record to be settled by the district court.<br><br>In its motion, as described <u>supra</u>, Plaintiff CareFirst blamed this Court for its failure to file a reply to | <u>CareFirst of Maryland v. First Care, P.C.</u>, CA-04-191-2  (4th Cir. February 7, 2005); Pl.'s Reply to Def.'s Supp. Submission in Supp. of Attorneys' Fees at 3 (Doc. 179). | Compliance with court rules; inattention to detail; blaming others for the problem. |

| Incident | Location in Record | Problem |
|---|---|---|
| Defendant First Care's opposition to its motion for summary judgment, even though Plaintiff CareFirst's motion for summary judgment was filed only five days prior to the pre-trial conference and could not have matured before that time.<br><br>Now, in its Reply to Defendants' Supplemental Submission in Support of Attorneys' Fees, Plaintiff CareFirst suggests that the problem arose because the "telephonic contacts were relayed through two sets of counsel" and that, "given that the second call from chambers personnel was reported to counsel right as CareFirst was preparing to file its own summary judgment reply brief, it is niether surprising nor evidence of bad faith that the contents of those messages were misinterpreted . . . ." | | |
| As described supra, Plaintiff CareFirst's reply to Defendant First Care's opposition to Plaintiff's motion for reconsideration was late. | Reply Brief to Def.'s response to Motion to Reconsider (Doc. 167). | Timeliness. |

As the above list indicates, Plaintiff CareFirst exhibited a pattern of conduct throughout this litigation evidencing a problem with meeting deadlines, an inattention to detail, an inability to follow court orders, a problem with complying with court rules, and an penchant for blaming others when problems arose.   See Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 161 (D.N.J. 1999) (observing that "[t]he invocation of [a district court's] inherent powers is particularly appropriate when an attorney's conduct has been pervasive and amounts to violations of several rules, and appears . . . to demonstrate a course of bad faith actions that transcend any rule or rules of the Court").   These problems, which occurred constantly, indicates a lack of sincerity and diligence on Plaintiff CareFirst's part to properly prosecute this case.   As the discovery problems Magistrate Judge Stillman encountered reveal, the attorneys for Plaintiff CareFirst seem to have obstructed the progress of the case whenever they could.

The Court expects to be briefed on Plaintiff CareFirst's sincerity in actually pursuing this case instead of harassing the defendants when the attorneys for Plaintiff CareFirst seemed unable to meet deadlines, follow the rules, or listen to either Magistrate Judge Stillman or this Court.  See Fed. R. Civ. P. 11(b) and Local Rule 83.1(L).  Should Defendant First Care bring other incidents to the Court's attention in its Brief, the Court shall consider them.

Finally, and most importantly with respect to the improper purpose prong of Rule 11 as well as the Court's inherent ability to sanction litigants, the Court has genuine cause to make a finding whether or not Plaintiff CareFirst and/or its attorneys needlessly increased the cost of litigation.   In this case, Defendant First Care maintains they would have changed their name if Plaintiff CareFirst "compensated First Care for the out-of-pocket expenses incurred from their legal defense and absorbed the cost of new signage, new letterhead, etc."  Id. at 6.   According to Defendant First Care, Plaintiff CareFirst rejected this offer, stating it does not pay "stipends to infringers."  Id. at 6 (citing Ex. 7, Declaration of Jason C. Kravitz).[6]  If this so, this Court cannot comprehend why Plaintiff CareFirst would prefer to generate for their client what must be close to $500,000 in legal fees[7] instead of settling this matter for what would be a paltry sum in comparison and in a way that would have achieved what its client wanted, namely that First Care stop using its name.  Over the course of the

---

[6]Plaintiff CareFirst flatly denies this.  Pl.'s Mem. in Opp. to Def.'s Mot. for Attorneys' Fees at 13 (Doc. 152).  Notably, with respect to a proposed settlement conference, Jason Kravitz, an attorney for Defendant First Care, states in a letter  to Christopher Collins, an attorney for Plaintiff CareFirst, that "I advised you a couple of months ago that First Care would be willing to consider a name change in exchange for a payment from CareFirst."  Def.'s Reply in Supp. of Pet. for Attorneys' Fees at Ex. 6 (Doc. 153).  Mr. Kravitz's letter was in response to a letter dated  on October 20, 2004  by Barth X. deRosa, attorney for Plaintiff CareFirst, in which he made an offer of settlement, asking Defendant First Care to compensate Plaintiff CareFirst $750,000 by October 27, 2004.

[7]The Court reaches this number based on the legal fees incurred by Defendant First Care.

past fifty years of trying, defending, and judging cases, the undersigned has always understood that a cardinal rule of the practice of law has been to ask this question: does the cost of litigation exceed the result obtained? The question arises as to whether the client or counsel understands basic principles of business and economics and how these principles affect lawsuits.

All of this raises several ethical questions in this Court's mind. If you can settle something for less than one percent of the expected cost of litigation and achieve the client's purpose, is litigation appropriate? If a client endorses conduct by counsel that is directly contrary to economic reality, does this mean that the client is acting maliciously, particularly when the attorneys for the client represent that the client's policy is to settle cases?[8] See Pl.'s Mem. in Opp. to Def.'s Pet. in Supp. of Attorneys' Fees at 13 n. 33 (Doc. 152). What conclusion should a court draw at the outset of a problem when the cost of litigation will probably exceed the benefit to a client by hundreds of thousands of dollars? What conclusion should a court draw when a plaintiff requests $28 million in damages in a case which, as detailed infra, seemed to have little or no chance of success? With respect to the attorneys, given the volume of papers filed in this case, the Court must determine whether they proceeded to litigate because the legal fees generated from prosecuting the case would total far more than the fees they would generate from settling the case – although, given their lack of attention to detail and problems complying with court orders and rules, ineptitude may indeed be a factor. Accordingly, both the attorneys for Plaintiff CareFirst and the Plaintiff CareFirst itself should address why their conduct in this case was not intended to increase the costs of litigation and to harass the defendants rather than to achieve a limited purpose.

---

[8]Another alternative is that the client has not been paying attention, although the fact that Mr. Broccolino, CareFirst's deputy counsel, wrote a letter confirming that the attorneys were "truly representing [CareFirst's] wishes" and he had "no evidence of [the attorneys] being overzealous" suggests otherwise. Def.'s Mem. in Supp. of Mot. for Attorneys' Fees at Ex 1B (Doc. 150).

### B.    Frivolous Legal and Factual Claims

Plaintiff CareFirst should next  address why it and its attorneys do not warrant sanctions for filing  frivolous legal arguments and claims lacking sufficient factual basis.[9]  Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions therein [must be] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."   "An assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that 'a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'"  In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998) (quoting Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987)).   An unjustified legal contention thus occurs when "a reasonable attorney would recognize it as frivolous."  Id.  (quoting Forrest Creek Assocs. v. McLean Sav. & Loan Ass'n, 831 F.2d 1238, 1245 (4th Cir.1987).   Another way to understand a Rule 11(b)(2) violation is that is consists of a legal position that "has absolutely no chance of success under the existing precedent."  Id.  (quoting Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir.1991)).

Similarly, Rule (b)(3) provides that the allegations and factual contentions "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  "A complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions."  Chaudhry v. Gallerizzo, 174 F.3d 394,

---

[9]According to the Advisory Note to Rule 11, "sanctions involving monetary awards . . . may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law."  Therefore, a sanction involving Plaintiff CareFirst under Rule 11, as a client, may not be monetary in nature.  The Court may, however, sanction the client under its discretionary powers to issue sanctions.

410-11 (4th Cir. 1999).  When no factual basis for a claim exists, that claim violates Rule 11(b)(3).

Chaplin, 303 F.Supp.2d at 771.

In this case, the Court is concerned whether both the legal contentions were frivolous and the

claims lacked sufficient factual basis.   As the Court noted in its Summary Judgment Order, Plaintiff

CareFirst failure to prove its claims was "spectacular."   First, Plaintiff CareFirst failed to show any

of the factors under the likelihood confusion prong of the two-prong analysis required to show

trademark infringement and unfair competition.   See 15 U.S.C. §§ 1114(1) and 1125.[10]   For example,

the evidence revealed that numerous users – users Plaintiff CareFirst was aware of – utilized the mark,

which strongly indicates a weak mark.   Moreover, Plaintiff CareFirst's Vice President of Corporate

Communications testified that, when the company communicates "to consumers and the general

public" the CareFirst mark is always accompanied by "Blue Cross Blue Shield."   See Def.'s Mot. for

Summ. J. at Ex. 8, p. 115 (Gallant deposition) (Doc. 87).   She also testified the mark was not well

known outside of Maryland in 1995, when First Care, P.C. began using the name First Care, which

directly contradicted any assertion that Defendant First Care adopted its name with the intent to trade

on Plaintiff CareFirst's goodwill.   Id.   As for actual confusion, this Court found that Plaintiff

CareFirst's own confusion survey showed that only two people out of 130 indicated actual confusion.

On de novo review, the United States Court of Appeals for the Fourth Circuit reached the same

conclusion.   CareFirst of Maryland, Inc., 434 F.3d at 268 (finding the survey showed only two out of

---

[10]When determining likelihood of confusion, actual confusion is not required; rather, courts should consider the following factors: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion." Id. "The factors are not of equal importance or equal relevance in every case." Petro Stopping Centers, L.P. v. James River Petroleum, 130 F.3d 88, 91 (1997).

130 people indicating actual confusion and stating that, "[a]lthough proof of actual confusion is not necessary to show a likelihood of confusion, the absence of any evidence of actual confusion over a substantial period of time – here, approximately nine years – creates a strong inference that there is no likelihood of confusion.   This important factor thus weighs heavily against CareFirst.").

Plaintiff CareFirst's dilution claim fared no better.   The Dilution Act provides that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity . . . , to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."   15 U.S.C. § 1125(c)(1).[11]   In this case, Plaintiff CareFirst had a difficult time showing its mark was famous when

---

[11]Under § 1125, in determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to:

(A) The degree of inherent or acquired distinctiveness of the mark;

(B) The duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) The duration and extent of advertising and publicity of the mark;

(D) The geographical extent of the trading area in which the mark is used;

(E) The channels of trade for the goods or services with which the mark is used;

(F) The degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

(G) The nature and extent of use of the same or similar marks by third parties; and

(H) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Defendant First Care began using the First Care name in 1995 – in fact, there was substantial evidence in the record indicating that the mark was <u>not</u> famous when Defendant First Care began operating and was certainly not famous in Portsmouth and Chesapeake, Virginia.   Plaintiff CareFirst's Vice President of Communications testified that the CareFirst name was not well-known throughout the country in 1995 – it was well known in Maryland.  <u>See</u> Def.'s Mot. for Summ. J. at Ex. 8, p. 80-81 (Gallant deposition) (Doc. 87).   When asked if the CareFirst name was well known in Virginia, Ms. Gallant testified that it was "less well known" than in Maryland.  <u>Id.</u>   In 1999, Ms. Gallant discussed the weakness of the CareFirst mark in a presentation, where she stated:

> One of the things we've known for a while is the lack of identity between CareFirst and our HMOs.  They carry the cross and shield, but there is a lack of identity clearly between us, not top-of-mind awareness.

<u>See id.</u>   The record clearly revealed that the CareFirst mark was not a famous mark at the time First Care began operating under that name in 1995.

In spite of the above, Plaintiff CareFirst may have proceeded with this litigation with an unwarranted amount of confidence and arrogance.   Plaintiff CareFirst should therefore next address why its attorneys do not warrant sanctions for filing frivolous legal arguments and claims lacking sufficient factual basis under Rule 11(b)(2) and (3), Local Rule 83.1, and the Court's inherent sanctioning power.

### C.   Abusive Language and Unprofessional Conduct

Sanctions may also be warranted against the attorneys for Plaintiff CareFirst for their inflammatory, abusive and vexatious language in the papers they filed before this Court as well as for the misstatements of facts contained in their sworn certifications.   <u>See</u> <u>Cannon</u>, 190 F.R.D. at 163.

The following excerpts from various papers filed by Plaintiff CareFirst "either cross the line from advocacy to impermissible personal recriminations, constitute unsubstantiated allegations, or contain out-right misstatements of fact." Id.

- In a letter to Defendant First Care, Mr. deRosa, counsel for Plaintiff CareFirst, wrote he had "complied with the Court's August 13 Order," when he had not, and then accused Defendant First Care's motion of being "nothing more than a litigation tactic designed to improperly waste the Court's and parties' time and money." Nov. 2, 2004 Order at 11 (Doc. 147).

- In its Opposition to Defendant's Motion to Compel, Plaintiff CareFirst attempted to project its own dilatory conduct onto the defendants, with phrases such as "[s]erved on the eve of the close of discovery of this matter, in an obvious and desperate attempt to disrupt the expert witness schedule and CareFirst's summary judgment motion preparation" and "[i]n stark contrast to the obstructive discovery tactics employed by First Care . . . ." Pl.'s Mem. in Opp. to Def.'s Mot. to Compel Production of Database Reports (Doc. 91). Noting that it was Plaintiff CareFirst that was found, on "multiple occasions," to have engaged in dilatory discovery, Magistrate Judge Stillman characterized this language as "inappropriately and unfairly attempt[ing] to impugn defendants' discovery efforts." Nov. 2, 2004 Order at 3, n. 1 (Doc. 147).

- In its Reply Brief in Support of its Motion for Reconsideration, Plaintiff CareFirst describes Defendant First Care's opposition to the motion as "sycophantic rhetoric." Pl.'s Reply Brief in Supp. of Mot. for Reconsideration at 2 (Doc. 167).

- In its Motion for Reconsideration, Plaintiff CareFirst accused this Court of "ignor[ing] modern day reality," "suspending common sense," "blindly" applying the wrong standard, "white-washing" the similarities in the parties' services, and "failing to understand this case." Pl.'s Mot. for Reconsideration at 6, 12, 14, 23, and 28 (Doc. 154).

- As detailed supra, Plaintiff CareFirst accused this Court of preventing it from filing a reply brief to its motion for summary judgment when its motion for summary judgment was filed only five days prior to the pre-trial conference and could not have matured as required by the Scheduling Order.

- In its Memorandum in Opposition to Defendant First Care's Petition for Attorneys' Fees, Plaintiff CareFirst blames Defendant First Care for its own dilatory conduct, going so far as to characterize the defense utilized as consisting of the "Stalingrad defense," stating "[l]ike the Germans facing wave after wave of the 'red horde,' Plaintiff was embrued [sic] with motion after

motion and hearing after hearing. . . .   It was Defendants' onslaught of excessive discovery requests and motion after motion that occasioned Plaintiff's 'dilatory conduct.'" Pl.'s Mem. in Opp. to Def.'s Pet. for Attorneys' Fees at 17 (Doc. 152).  Plaintiff CareFirst makes this accusation even though it was the plaintiff that, because of its refusal to follow court orders and rules of discovery,  required Defendant First Care to file repeated motions in order to ensure compliance.     Moreover, a Stalingrad defense is utilized by a defendant in an attempt to <u>prevent</u> discovery in order to prevent information from coming out; here, the defendant <u>sought</u> discovery and the disclosure of information.

Give the above, the attorneys for Plaintiff CareFirst should address why their conduct in this case was not abusive, vexatious, and inflammatory.  Should Defendant First Care bring other instances of such conduct to the Court's attention, the Court will consider it.


### III.    Conclusion

Ultimately, the question is did the prosecution of this case exceed the bounds of propriety?  The Court is very concerned about the tremendous waste of time and resources this case has caused when it appears it may have been settled for the cost of replacing Defendant First Care's signage and letterhead.  The Court can only speculate why the most efficient and economic solutions were not pursued by Plaintiff CareFirst, given its shaky legal arguments and the lack of sufficient facts to bolster its claims.

This Court is also struck by the willingness of Plaintiff CareFirst to create excuses and blame others whenever problems occurred in this case.   Somehow, when something went wrong, there was always a reason:  lack of communication between its own lawyers, lack of communication with its local counsel, and lack of flexibility from Defendant First Care.   Indeed, the Court itself was not immune from Plaintiff CareFirst's accusations.    After a while, the Court begins to wonder if it is dealing with UNRULY CHILDREN NOT USED TO GETTING THEIR WAY instead of WELL-

TRAINED AND WELL-COMPENSATED PROFESSIONALS.   The fable of the boy who cried wolf

comes to mind – after a while, repeated "mistakes" and "misinterpretations" begin to look like bad

faith.   In any event, the primary questions at the evidentiary hearing will be:

1.   Is this case an exceptional one pursuant to 15 U.S.C. § 1117(a) warranting an award of attorneys' fees to Defendant First Care?

2.   Are Defendant First Care's attorneys' fees reasonable?

3.   Should the Plaintiff CareFirst be required to pay the fees?

4.   Should the attorneys for Plaintiff CareFirst or the Plaintiff CareFirst itself be sanctioned?

5.   If attorneys' fees are warranted, should the amount Plaintiff CareFirst pays be reduced and Plaintiff CareFirst's attorneys' sanctioned and ordered to bear a portion of or all of the fees?

6.   Do those, if any who may be responsible for Defendant First Care's fees, have the ability to pay?

7.   Are other sanctions appropriate against the attorneys for Plaintiff CareFirst and/or the Plaintiff CareFirst itself?

All of the parties shall brief these issues in response to this Order and an evidentiary hearing shall be

held.   The attorneys for Plaintiff CareFirst and the Plaintiff CareFirst itself will have the opportunity

to explain themselves and to show cause why they should not pay attorneys' fees and/or be sanctioned.

The Court rarely sanctions parties sua sponte, but desires all of the parties to set forth their positions.

In any event, for the reasons stated herein:

1.   Plaintiff CareFirst is **ORDERED** to **SHOW CAUSE** as to why, in addition to Defendant First Care's motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) and Fed. R. Civ. P. 54(d), sanctions pursuant to FED. R. CIV. P. 11, Local Rule 83.1, and the Court's inherent power to sanction litigants' behavior should not be imposed.

2.   Plaintiff CareFirst and Defendant First Care are **DIRECTED** to brief the issue of whether sanctions should be imposed and, if so, the scope of such sanctions within twenty (20) days of the date of this Order.   Both parties may submit a response to the other party's brief within three (3) days after the service of the opposing party's brief.

3.    Because the client, CareFirst, may be subject to sanctions, Plaintiff CareFirst is **NOTIFIED** that, should Plaintiff CareFirst desire to submit a brief separate and apart from its attorneys' brief, the Court will allow it to do so.  The Court will also allow the client to appear at the hearing separate and apart from its attorneys.

4.    The parties and their attorneys are **ORDERED** to contact Beth Orga, the Court's Deputy Clerk, at 757-222-7251 so that an evidentiary hearing may be scheduled on attorneys' fees and sanctions.   Given the briefing schedule, the evidentiary hearing should be scheduled to occur sometime after twenty-four (24) days of the date of this Order.

5.    The Court **GRANTS** Defendant First Care's Motion for Leave to File a Supplemental Submission in Support of its Petition for Attorneys' Fees (Doc. 178).  The Clerk is **DIRECTED** to file the Supplemental Submission.   Pursuant to Local Rule 7, Plaintiff CareFirst will have eleven (11) days from the date of this Order to file a responsive brief and Defendant First Care may file a rebuttal brief within three (3) days after service of the reply brief.

6.    The Court **DENIES** Defendant First Care's Motion to Strike the Declaration of Sharon Miller included in Plaintiff's Opposition Memorandum (Doc. 155).

7.    The Court **GRANTS** Plaintiff CareFirst's Motion for Leave to File Sur-Reply in Opposition to Defendant First Care's Petition for Attorneys' Fees (Doc. 156).  No further motions shall be permitted without prior permission of the Court.   The parties may utilize the scheduled hearing to address and contest the other's arguments with respect to attorneys' fees.

8.    The Court **DISMISSES AS MOOT** Defendant First Care's Motion to Strike as Untimely Plaintiff CareFirst's Reply filed by Plaintiff First Care (Doc. 168).

The Clerk is **DIRECTED** to send by facsimile and United States mail a copy of this Order to all counsel of record, including local counsel, and to the Plaintiff.

**IT IS SO ORDERED.**

_____/s/_____
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 10, 2006

28